

**Dated: October 31, 2017.**



_____
**H. CHRISTOPHER MOTT**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| JOHN P. ROBERT and | § | |
| WILMA R. ROBERT | § | Case No. 16-11075-hcm |
| Debtors | § | (Chapter 7) |

_____

| | | |
|---|---|---|
| RON SATIJA, Chapter 7 trustee, | § | |
| Plaintiff | § | Adversary No. 17-01021-hcm |
| v. | § | |
| | § | |
| JOHN P. ROBERT and | § | |
| WILMA R. ROBERT, | § | |
| Defendants. | § | |

**MEMORANDUM OPINION**
**GRANTING OBJECTION TO DISCHARGE OF DEBTORS**

John P. Robert and Wilma R. Robert ("Debtors") filed a Chapter 7 bankruptcy case.  Ron Satija, Chapter 7 Trustee (as Plaintiff) initiated this adversary proceeding against the Debtors (as Defendants) objecting to the Debtors' bankruptcy discharge. The Court conducted a trial in this adversary proceeding and took the matter under advisement.  The Court now issues this Memorandum Opinion granting the Trustee's objection to the discharge of the Debtors.

1

**I.**
**INTRODUCTION WITH PROCEDURAL BACKGROUND**

#### A. Parties

The Plaintiff in this adversary proceeding is Ron Satija, in his capacity as Chapter 7 trustee ("Trustee"). The Defendants are John P. Robert ("Dr. Robert") and spouse Wilma A. Robert ("Ms. Robert"), who are debtors in this bankruptcy case ("collectively "Debtors").

#### B. Jurisdiction

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This adversary proceeding arises under the Bankruptcy Code in a bankruptcy case referred to this Court by the Standing Order of Reference entered in this District. Specifically, this adversary proceeding constitutes a "core" proceeding under 28 U.S.C. § 157(b)(2)(J). This Court has authority to enter a final judgment in this adversary proceeding. *See* 28 U.S.C. § 157(b)(1); *see also* Order and Statements (dkt# 16, 19, 22).[1]

#### C. Bankruptcy Case

On September 15, 2016, the Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code with this Court in bankruptcy case no. 16-11075. On September 16, 2016, the Trustee was appointed in the Debtors' bankruptcy case.

#### D. Adversary Proceeding and Trial

On February 10, 2017, the Trustee (as Plaintiff), filed an Original Complaint Objecting to Discharge ("Complaint") against the Debtors (as Defendants), which

---

[1] References to "dkt#" mean the docket number maintained in CM/ECF by the Clerk of the Bankruptcy Court in this adversary proceeding no. 17-01021.

initiated this adversary proceeding.

Through the lengthy Complaint, the Trustee seeks to deny a bankruptcy discharge to the Debtors on three separate grounds. In sum, the Trustee contends that the Debtors made "false oaths" in this bankruptcy case, by filing false bankruptcy schedules and statements and providing false testimony. Next, the Trustee contends that the Debtors concealed and/or failed to preserve financial records necessary to determine the Debtors' financial condition and transactions (primarily bank account records). Third, the Trustee contends that the Debtors have failed to satisfactorily explain the loss and deficiency of their assets (primarily cash). The Complaint seeks denial of the Debtors' discharge under §§ 727(a)(4)(A), 727(a)(3), and/or 727(a)(5) of the Bankruptcy Code. *See* Complaint (dkt# 1).

On April 5, 2017, the Debtors filed an Answer to the Complaint ("Answer"). In general, through the Answer, the Debtors admitted and denied certain allegations contained in the Complaint. *See* Answer (dkt# 14).

On September 1, 2017, the Trustee and the Debtors filed a Joint Pretrial Order in this adversary proceeding ("PTO") (dkt# 34). The PTO contains numerous stipulations of fact by the parties in this adversary proceeding. The PTO and the stipulations contained therein have been accepted and considered by the Court.

On September 18, 2017, a trial was conducted in this adversary proceeding. Three witnesses testified in person at trial: (1) Dr. John P. Robert (a Debtor and a Defendant); (2) Ms. Wilma R. Robert (a Debtor and Defendant); and (3) Mr. Ron Satija (the Trustee and Plaintiff). The Court has considered and weighed the testimony of all witnesses, regardless of whether the testimony of a witness is specifically referred to in

this Opinion.

At trial, the Court admitted Exhibits P-1 through P-18 into evidence, which were used jointly by the parties (herein "PX-___").

After trial, on October 2, 2017, the Trustee filed Proposed Findings of Fact and Conclusions of Law ("Trustee Proposed Findings") (dkt# 40). Likewise, on October 2, 2017, the Debtors filed Proposed Findings of Fact and Conclusions of Law ("Debtors Proposed Findings") (dkt# 39).

### E. Findings and Conclusions of Court

This Opinion constitutes the Court's findings of fact and conclusions of law in this adversary proceeding in accordance with Rules 7052(a)(1) and 9014(c) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").[2]

In reaching the findings and conclusions set forth in this Opinion, the Court has considered and weighed all the evidence, the testimony, demeanor and credibility of all witnesses, the admitted exhibits, the arguments of counsel, and the pleadings and briefs filed by all parties, regardless of whether they are specifically referenced in this Opinion.[3]

---

[2] To the extent any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.

[3] Cents (pennies) are intentionally omitted by the Court in the dollar figures used in this Opinion. Sense, however, is not intentionally omitted.

## II.
### FINDINGS OF FACT

The following constitutes Findings of Fact by the Court in this adversary proceeding, which includes factual stipulations made by the parties in the PTO.

### A. Background of Debtors

The Debtors are a married couple that moved from South Dakota to Texas several months before their bankruptcy filing. Dr. Robert graduated from medical school in 1981 and had a lengthy career as a military and then a private physician. Dr. Robert retired from medical practice in early 2016 due to heart disease.  Ms. Robert is a long-time registered nurse that still works. Prior to the retirement of Dr. Robert in 2016, the Debtors made substantial income—over $450,000 in the years 2014 and 2015. The Debtors are both well educated and sophisticated.

### B. Sworn Bankruptcy Schedules/Creditors Meeting

The Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code on September 15, 2016 in main bankruptcy case no. 16-11075. The Debtors filed their original Bankruptcy Schedules ("Original Schedules") and original Statement of Financial Affairs ("Original SOFA") also on September 15, 2016. (PX-1). The Debtors signed the Original Schedules and Original SOFA under penalty of perjury.

The Trustee held the statutory section 341 creditors meeting in the Debtors case on October 13, 2016 ("Creditors Meeting"). The Trustee administered the oath to the Debtors and the Debtors swore to tell the truth at the Creditors Meeting. (PTO ¶ 10).

At the Creditors Meeting, the Debtors testified that they had listed all of their assets in their Bankruptcy Schedules. (PTO ¶ 12). The Trustee asked an additional time if the Debtors had listed all of their assets in their Bankruptcy Schedules, and the

Debtors again testified that they had listed all of their assets in their bankruptcy schedules. (PTO ¶ 14). The Debtors have now stipulated that the Debtors twice made false statements under oath at the Creditors Meeting when they testified that they listed all of their assets in their Bankruptcy Schedules. (PTO ¶¶ 13, 15). At the Creditors Meeting, the Debtors also testified that they continued to make vehicle payments and continued to make insurance payments on behalf of their son after the Debtors had transferred a vehicle to their son. (PTO ¶ 16). At the Creditors Meeting, the Debtors also testified that they owned three time shares. (PTO ¶ 18).

After the Creditors Meeting, the Debtors filed amended Bankruptcy Schedules ("Amended Schedules") and amended Statement of Financial Affairs ("Amended SOFA") on October 25, 2016. (dkt# 10 in main bankruptcy case no. 16-11075 (Amended Schedules) and PX-2 (Amended SOFA)). The Debtors signed the Amended Schedules and Amended SOFA under penalty of perjury. The Amended Schedules filed by the Debtors only amended Schedule E/F (Creditors).

On February 10, 2017, the Trustee filed his Complaint Objecting to the Discharge of Debtors (herein "Complaint")(dkt# 1). In part, the Complaint alleged that the Debtors failed to list all of their assets in their sworn Bankruptcy Schedules, failed to accurately disclose information in their sworn Statement of Financial Affairs ("SOFA"), and made numerous false oaths and statements. *See* Complaint ¶¶ 13-68, 78-127, 196-233.

Months later, on May 5, 2017, the Debtors then filed their second amended Bankruptcy Schedules ("Second Amended Schedules") and their second amended Statement of Financial Affairs ("Second Amended SOFA"). (PX-3). The Debtors signed the Second Amended Schedules and Second Amended SOFA under penalty of perjury.

In sum, the Court finds that the Debtors made multiple false statements in their sworn Original Schedules and in their sworn Original and Amended SOFA, as set forth below.  The Original Schedules signed by the Debtors did not disclose their multiple bank accounts, did not disclose their cash, and did not disclose their ownership of time shares, stock, and several life insurance policies.  The Original and Amended SOFA signed by the Debtors failed to disclose their rental income, investment income, consulting income and other income, and did not accurately and completely disclose payments to creditors and payments for the benefit of insider family members.

Shortly after the Creditors Meeting where the Debtors had falsely testified that they had disclosed all of their assets, the Debtors then signed and filed sworn Amended Schedules. Yet these Amended Schedules signed by the Debtors still did not disclose the multiple assets that the Debtors omitted from their Original Schedules. And the Amended SOFA signed by the Debtors still did not correct the multiple false statements made by the Debtors in their Original SOFA.

Months after the Trustee filed this adversary proceeding seeking to deny the Debtors their discharge for false statements, the Debtors signed and filed their Second Amended Schedules and a Second Amended SOFA.  The Second Amended Schedules and SOFA addressed many of the Debtors' omissions and false statements in their Original and Amended Schedules and SOFA.

Significantly, the Second Amended Schedules and SOFA were not signed and filed by the Debtors until May 5, 2017-- almost three months after the Trustee had filed this adversary proceeding raising the false statements made by the Debtors, about  six months after the Debtors filed their First Amended Schedules and SOFA,  almost seven

months after the Debtors falsely testified at the Creditors Meeting, and almost eight months after the Debtors filed their Original Schedules and SOFA.

**C.  False Statements in Bankruptcy Schedules**

The Court finds that the Debtors made the following false statements in their Original Schedules. (PX-1). These false statements were effectively reconfirmed by the Debtors when they filed their Amended Schedules.

1.  <u>Bank Accounts</u>. On Schedule A/B, Part 4, Question 17 of their Original Schedules, the Debtors stated, under penalty of perjury, that they did not own any checking, savings or other financial accounts as of their bankruptcy filing date ("<u>Bank Accounts</u>"). The evidence proved that the Debtors, in fact, owned Bank Accounts as of their bankruptcy filing date. The Debtors later admitted that they owned a Bank of America checking account xxxx5251 and a Bank of America savings account xxxx0077 on the date they filed bankruptcy.  (PTO ¶¶ 84, 86).  The Debtors admitted that they failed to disclose these Bank of America accounts in their Original Schedules, and they did not disclose such bank accounts in their Amended Schedules either. (PTO ¶¶ 85, 87).  Ms. Robert also admitted that she also owned a Dakotaland FCU checking account xxxx9710 at the time of their bankruptcy filing. (PTO ¶88).  Ms. Robert admitted that she failed to disclose the Dakotaland FCU checking account xxxx9710 in the Original Schedules, and the Debtors did not disclose such account in the Amended Schedules either. (PTO ¶89). There were actually two accounts within the Dakotaland FCU account xxxx9710, a checking account (xxxx9710-9) and a savings account (xxxx9710-1) according to Ms. Robert's testimony. At trial, both Debtors admitted that they owned these Bank of America and Dakotaland FCU accounts when they filed bankruptcy, and that the Debtors knew they owned such accounts at the time they filed bankruptcy. The Debtors also owned a USAA savings account on the date they filed bankruptcy.  At trial, Ms. Robert testified that they had opened this USAA account but never used it on a regular basis.  However, the Debtors failed to disclose their ownership in this USAA account on their Original Schedules and did not disclose it in their Amended Schedules either. The Debtors also never provided to the Trustee any bank statements in connection with this USAA account. The Debtors did not disclose their ownership of these two Bank of America accounts, the Dakotaland FCU account, and the USAA account in their bankruptcy filings until many months later, when they filed their Second Amended Schedules on May 5, 2017.

2.  <u>Cash.</u> On Schedule A/B, Part 4, Question 16 of their Original Schedules, the Debtors stated, under penalty of perjury, that they did not own any cash on hand as of their bankruptcy filing date ("<u>Cash</u>"). The evidence proved that the Debtors, in fact, owned Cash on hand as of their bankruptcy filing date. The

Debtors later admitted that they failed to disclose the Cash. (PTO ¶¶ 29, 30). The Debtors also did not disclose any Cash in their Amended Schedules either.  The Debtors did not disclose the Cash they owned until they filed their Second Amended Schedules many months later and well after the Trustee filed his Complaint against the Debtors.

3.      Time Shares. On Schedule A/B, Part 1 of their Original Schedules, the Debtors did not disclose three time shares they owned as of their bankruptcy filing ("Time Shares"). (PTO ¶ 19).  At the Creditors Meeting, the Debtors testified that they owned three Time Shares. (PTO ¶ 18). Yet when the Debtors filed their Amended Schedules shortly after the Creditors Meeting, they again failed to disclose their ownership of the Time Shares in their bankruptcy filings.   The Debtors did not disclose the details of these three Time Shares until they filed their Second Amended Schedules many months later and after the Trustee filed his Complaint.  At trial, the Debtors testified the Time Shares had no value.

4.      Stock. On Schedule A/B, Part 4, Question 18 of their Original Schedules, the Debtors stated, under penalty of perjury, that they did not own any publicly traded stock as of their bankruptcy filing ("Stock").  The evidence showed that the Debtors, in fact, did own Stock as of their bankruptcy filing. The Debtors later admitted that they owned stock in Comcast. (PTO ¶ 90).  The Debtors also owned stock in AT&T. At trial, Dr. Robert testified that he did not know he owned the AT&T stock until someone from his counsel's office asked him about it, and that it was one share of stock that became worthless over time. The Debtors did not disclose their ownership of the Comcast stock and AT&T stock in their Original Schedules and did not disclose the stock in their Amended Schedules either. The Debtors did not disclose their ownership of the Comcast and AT&T stock they owned until they filed their Second Amended Schedules many months later and after the Trustee filed his Complaint against the Debtors.

5.      Insurance Policies. On Schedule A/B, Part 4, Question 31 of their Original Schedules, the Debtors stated, under penalty of perjury, that they owned two "term" life insurance policies as of their bankruptcy filing ("Insurance Policies"). The evidence showed that the Debtors, in fact, owned more than these two term life insurance policies on the date they filed bankruptcy. When Debtors filed their Amended Schedules, no disclosure of additional insurance policies was made by the Debtors. In their Second Amended Schedules, the Debtors finally disclosed ownership of one term life policy and added five "whole" life insurance policies with cash surrender values. At trial, Dr. Robert testified that he did not know they owned the additional whole life policies; yet Ms. Robert testified that she knew they owned the whole life policies at the time of their bankruptcy filing. Again, the Debtors did not disclose their ownership of these additional five whole life insurance policies with cash surrender value until they filed their Second Amended Schedules many months later and after the Trustee filed his Complaint against the Debtors.

6.    Co-Debtor. On Schedule H of the Original Schedules, the Debtors stated, under penalty of perjury, that they had no co-debtors ("Co-Debtor"). The evidence showed that the Debtors had a Co-Debtor, John Patrick Robert (their son), on a car loan for a 2013 Ford Focus. The Debtors did not disclose their son as a Co-Debtor in their Amended Schedules either. The Debtors later admitted that John Patrick Robert was a Co-Debtor and that they failed to disclose John Patrick Robert as a Co-Debtor on Schedule H. (PTO ¶¶ 26, 27). The Debtors did not disclose their son as a Co-Debtor until they filed their Second Amended Schedules many months later and after the Trustee filed his Complaint against the Debtors.

## D.  False Statements in Statement of Financial Affairs ('SOFA")

The Court finds that the Debtors made the following false statements in their

sworn Original SOFA and their Amended SOFA.  (PX-1 and PX-2).

1.    Rental Income. In their Original SOFA and Amended SOFA, Part 2, Question 5, the Debtors did not disclose rental income from two houses they received for calendar years 2014 and 2015 ("Rental Income"). (PTO ¶¶ 34, 35, 37, 38, 40, 41). The Debtors stipulated that their federal income tax returns (Schedule E) filed for the years 2014 and 2015 show the following Rental Income:

|  | 2014 | 2015 |
|---|---|---|
| 1350 Rowe Road, Niskayuna, New York | $19,963 | $18,000 |
| 8   Upland Terrace, Allegany, New York | $11,700 | $ 6,735 |

*See* PTO (¶¶ 36, 39), (PX-5 and PX-6).  The Debtors did not disclose this Rental Income until they filed their Second Amended Schedules many months later and well after the Trustee filed his Complaint against the Debtors.

2.    Investment Income. In their Original SOFA and Amended SOFA, Part 2, Question 5, the Debtors did not disclose Edward Jones investment income of $14,237 for the year 2016 ("Investment Income").  Ms. Robert testified that she believed the income was received in 2015; however, the Debtors did not disclose this income for the 2015 year in their Original or Amended SOFA either. The Debtors did not disclose this Investment Income until they filed their Second Amended SOFA, months after the Trustee filed his Complaint against the Debtors.

3.    Consulting Income. In their SOFA and Amended SOFA, Part 11, Question 27, the Debtors did not disclose any business, sole proprietorship or self-employment for either of the Debtors. (PTO ¶¶ 42, 43). The Debtors stipulated, however, that their federal income tax returns (Schedule C) for the years 2014 and 2015 show the following income attributable to Ms. Robert's work for the

Undersea & Hyperbaric Medical Association:

| 2014 | 2015 |
|------|------|
| $12,861 | $12,123 |

These 2014 and 2015 federal tax returns (Schedule C) show Ms. Robert's business income from a sole proprietorship.  (PTO ¶¶ 44, 45), (PX-5 and PX-6).  At trial, Ms. Robert testified that this was income she received from Undersea & Hyperbaric Medical Association as a consultant ("Consulting Income"). In their Original SOFA and Amended SOFA, Part 2, Question 5, the Debtors did not disclose the Consulting Income that Ms. Robert received from the Undersea & Hyperbaric Medical Association in 2014 and 2015.  At trial, Ms. Roberts testified that the Consulting Income was included in Dr. Robert's gross wages that he disclosed in their Second Amended SOFA for 2014 and 2015.  Although the Court recognizes that the amount of Dr. Robert's 2014 and 2015 gross income was increased in the Second Amended SOFA filed by the Debtors, the increase in Dr. Robert's income does not match the amount of the Consulting Income received by Ms. Robert. Further, Part 2, Question 4 of the Second Amended SOFA specifically requires that the income of Ms. Robert (Debtor 2) be separately disclosed from income of Dr. Robert (Debtor 1).  At bottom, the Court finds that the Consulting Income received by Ms. Robert from Undersea & Hyperbaric Medical Association was not disclosed by the Debtors in their Original, Amended, or Second Amended SOFA.

4.    Disability/Retirement Income. In their Original SOFA, Part 2, Question 5, the Debtors failed to disclose the VA disability payments and U.S. Army retirement pension payments that Dr. Robert had received from January 1, 2016 through the date of the bankruptcy filing ("Disability/Retirement Income").  This income was not disclosed by the Debtors on the Amended SOFA either.  The Debtors did not disclose this Disability/Retirement Income until they filed their Second Amended SOFA on May 5, 2017 and months after the Trustee filed his Complaint against the Debtors.

5.    90-Day Payments. In their Original and Amended SOFA, Part 3, Question 6, the Debtors failed to completely and accurately disclose all payments totaling over $600 to a creditor that were made within 90 days before the date of their bankruptcy ("90-Day Payments").  In their Original SOFA, the Debtors listed a "total" amount paid of $909 monthly to Dakotaland FCU for a car and a "total" amount paid of $1,050 monthly to Dakotaland FCU for a car as 90-Day Payments; but did not disclose the dates of such payments.  The same inaccurate disclosures were made again by the Debtors in their Amended SOFA. It was not until the Debtors filed their Second Amended SOFA months later and after the Trustee filed his Complaint, that the Debtors changed and increased the amount of the 90-Day Payments as follows: payments totaling $1,818 to Dakotaland FCU for a car on 07/05/16, 08/03/16, 08/15/16, 08/16/16 and

09/12/16; and payments totaling $1,750 to Dakotaland FCU for another car on 07/05/16, 07/10/16, 08/16/16 and 09/12/16.

6.      Insider Payments. In their Original SOFA and Amended SOFA, Part 3, Question 8, the Debtors failed to disclose payments they made within 1 year before filing of bankruptcy that benefitted the Debtors' son and daughter, who are insiders ("Insider Payments").[4]  The Debtors eventually admitted that they failed to disclose the payments the Debtors made to Dakotaland FCU on a car loan for which their son (an insider) was a co-debtor in their Original and Amended SOFA. (PTO ¶¶ 58, 60, 61). It was not until after the Trustee filed his Complaint that the Debtors finally listed the payments they had made for the benefit of their son within the 1-year period in their Second Amended SOFA filed on May 5, 2017. In addition, the Debtors also failed to disclose on their Original and Amended SOFA the payments they made that benefitted their daughter (an insider) within 1-year prior to filing bankruptcy.  It was not until Debtors filed their Second Amended SOFA many months later that the Debtors disclosed payments from October 2015 to September 2016 to Bank of America Home Loans, but the Debtors described the payments as "monthly rent for home being lease (sic) from daughter."  According to the Debtors, they were making a mortgage payment directly to Bank of America Home Loans as the Debtors' rental payment for the Texas house.  However, at trial the Debtors testified that they did not move to Texas until late February 2016 and really did not actually begin paying rent to their daughter until January 2016.  Ms. Robert testified that she was actually helping her daughter by making her mortgage payments prior to moving to Texas, as her daughter could not afford to continue to make the mortgage payments on the Texas house that the Debtors were getting ready to rent from their daughter.  Dr. Robert testified that he did not know Ms. Robert was making any payments on behalf of their daughter prior to their moving to Texas in 2016.

7.      Closed Financial Accounts. In their Original and Amended SOFA, Part 8, Question 20, the Debtors failed to disclose that they had closed financial accounts within 1 year before filing bankruptcy ("Closed Financial Accounts"). (PTO ¶¶ 46, 47).  After the Trustee filed his Complaint and months later in their Second Amended SOFA filed on May 5, 2017, the Debtors finally disclosed that they had closed four financial accounts within 1 year before filing bankruptcy.

## E.  Recordkeeping and Omissions by Debtors

At trial, Dr. Robert testified that he is not a good recordkeeper. Dr. Robert claimed the bankruptcy forms were foreign to him, complicated, and admitted that there were questions that were misunderstood or overlooked.  The Debtors contend that the assets that they did not disclose were of *de minimis* value. The Debtors also believe

---

[4]  The Bankruptcy Code defines "insider" as a relative of a debtor. 11 U.S.C. § 101(31)(A)(i).

that they have now corrected most of their errors and omissions by filing their Second Amended Schedules and SOFA.

### III.
### CONCLUSIONS OF LAW

The following constitutes Conclusions of Law by the Court, together with its legal analysis.

The Trustee objects to the Debtors' bankruptcy discharge under § 727 of the Bankruptcy Code.[5] Specifically, the Trustee seeks to deny the Debtors a bankruptcy discharge on three alternative legal grounds: (1) § 727(a)(4) (for making false oaths in connection with this bankruptcy case); (2) § 727(a)(3) (for concealing and/or failing to preserve financial records necessary to determine the Debtors' financial condition and transactions); and (3) § 727(a)(5) (failing to satisfactorily explain the loss and deficiency of their assets). *See* Complaint (dkt#1).

### A. Standard and Burden of Proof

The Bankruptcy Code embodies an "exchange" policy, particularly in a Chapter 7 bankruptcy case. If a debtor is truthful and a debtor timely and completely discloses all required financial information, then the debtor in "exchange" gets a discharge of his debts—regardless of whether or not creditors get paid.  As other courts have more aptly described it:

> a discharge in bankruptcy is a privilege—not a right—which must be earned. Upon filing for bankruptcy, it is the debtor's obligation to be forthright in providing financial information. No one is obligated to recreate the debtor's financial affairs; that task is his alone. The Bankruptcy Code makes complete financial disclosure a "condition precedent" to discharge.... In short, the global purpose of § 727 is to

---

[5]  The Trustee has standing under § 727(c)(1) of the Bankruptcy Code to object to a debtor's discharge.

relieve creditors from the burden of "discovering" assets and to place it where it rightfully belongs, upon the debtor.

*First United Bank & Trust Co. v. Buescher (In re Buescher)*, 491 B.R. 419, 431 (Bankr. E.D. Tex. 2013); *Sonders v. Mezvinsky (In re Mezvinsky)*, 265 B.R. 681, 690 (Bankr. E.D. Penn. 2001) (citations and internal quotations omitted); *see also Robbins v. Wolf (In re Wolf)*, 2016 WL 4940198 at * 45 (Bankr. W. D. Tex. Sept. 15, 2016), *aff'd,* No. 17-50175 (5th Cir. Sept. 1, 2017)(unpublished).

To deny a discharge to a debtor is a harsh remedy. *See Buescher,* 491 B.R. at 431; *Pher Partners v. Womble (In re Womble)*, 289 B.R. 836, 845 (Bankr. N.D. Tex. 2003). As a result, according to the Fifth Circuit, the denial of discharge provisions under § 727(a) are strictly construed against parties attempting to deny a debtor his discharge. *See Laughlin v. Nouveau Body & Tan, LLC (In re Laughlin)*, 602 F.3d 417, 421 (5th Cir. 2010) (supporting citations omitted); *Judgment Factors, LLC v. Packer (In re Packer)*, 520 B.R. 520, 533 (Bankr. E.D. Tex. 2014).

The party objecting to a debtor's discharge (here the Trustee) bears the burden of proof, by a preponderance of the evidence standard. *See* Bankruptcy Rule 4005; *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir.1992).

## B. <u>False Oath—Elements of § 727(a)(4)</u>

Here, the Trustee seeks to deny the Debtors their bankruptcy discharge under § 727(a)(4) of the Bankruptcy Code. In pertinent part, § 727(a)(4) provides:

> (a)    The court shall grant the debtor a discharge, unless—

>        (4) the debtor knowingly and fraudulently, in or in connection with the case—
>                (A) made a false oath or account …

Under § 727(a)(4), a "false oath" sufficient to deny discharge includes a false statement by a debtor in bankruptcy schedules.  Likewise, the omission of an asset by a debtor in bankruptcy schedules constitutes a "false oath."  *See, e.g. Buckeye Ret. Co., LLC, Ltd. v. Bullough (In re Bullough)*, 358 B.R. 261, 281 (Bankr. N.D. Tex. 2007). A false statement by a debtor during an examination in the bankruptcy case can also be a "false oath."  *See Sholdra v. Chilmark Fin. LLP (In re Sholdra),* 249 F.3d 380, 383 (5th Cir. 2001); *Beaubouef,* 966 F.2d at 178.

As the Fifth Circuit has repeatedly recognized, full disclosure by a debtor in bankruptcy schedules in a Chapter 7 case is "essential." *See, e.g.*, *Beaubouef*, 966 F.2d at 179 (noting that full disclosure is essential because it allows the Trustee to determine if the information is true without an investigation).  The bankruptcy schedules prepared by a debtor ensure that "adequate information is available to the trustee and creditors without the need for investigation to determine whether the information provided is true." *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 566 (5th Cir. 2005); *Sholdra*, 249 F.3d. at 382; *Beaubouef*, 966 F.2d at 178 (supporting citations omitted).

To deny a debtor a discharge under § 727(a)(4)(A), it must be proven that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and  (5) the statement related materially to the bankruptcy case.[6]  *See Pratt*, 411 F.3d at 566; *Beaubouef*, 966 F.2d at 178.

---

[6] The burden of proof rests with the plaintiff (in this case, the Trustee) to prove by a preponderance of evidence that the debtor made a false oath. But once the plaintiff has established a *prima facie* case of a false oath, the burden shifts to the defendant debtor to prove that he did not make a false oath. *See Cadle Co. v. Duncan (In re Duncan),* 562 F.3d 688, 696 (5th Cir. 2009) (supporting citations omitted).

With respect to the fraudulent intent requirement, a debtor need not have acted deliberately to deceive creditors. "It makes no difference that [the debtor] does not intend to injure his creditors when he makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them." *Beaubouef*, 966 F.2d at 178 (quoting *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 617 (11th Cir. 1984)).

The Fifth Circuit has often recognized that the cumulative effect of multiple false statements by a debtor demonstrates "reckless disregard for the truth"—which can establish the fraudulent intent requirement for the purposes of § 727(a)(4)(A). *See e.g., Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009) (supporting citations omitted); *Sholdra*, 249 F.3d. at 382; *Beaubouef*, 966 F.2d at 178; *see also Chu v. Tex. (In re Chu)*, 679 Fed. Appx. 316, 319 (5th Cir. 2017)(unpublished); *Cadle Co. v. Mitchell (In re Mitchell)*, 102 Fed. Appx. 860, 862 (5th Cir. 2004)(unpublished).

An "honest" mistake by the debtor in his bankruptcy schedules is not, by itself, sufficient to deny the debtor's discharge. *See Beaubouef*, 966 F.2d at 178.  But a series of mistakes or omissions by a debtor can show a pattern of reckless disregard for the truth. *See Duncan,* 562 F.3d at 695; *Sholdra*, 249 F.3d. at 382; *Beaubouef*, 966 F.2d at 178; *see also FDIC v. Sullivan (In re Sullivan)*, 204 B.R. 919, 942–43 (Bankr. N.D. Tex.1997) (supporting citations omitted); *In re Sticht*, 2005 WL 6441384 at *4 (Bankr. N.D. Tex. Oct. 20, 2005)(based on the number of errors and omissions, debtors signed their schedules and statement of financial affairs with a reckless disregard for the truth).

A false statement or omission is "material" for the purposes of § 727(a)(4)(A) if it bears a relationship to the debtor's "business transactions or estate, or concerns the

discovery of assets, business dealings, or the existence or disposition of the debtor's property." *Beaubouef*, 966 F.2d at 178 (quoting *Chalik*, 748 F.2d at 618); *Duncan*, 562 F.3d at 695. Materiality is not based only on the value of an omitted item or whether the omitted item caused any detriment to creditors. *See Duncan,* 562 F.3d at 695; *Beaubouef*, 966 F.2d at 178.  As recognized by the Fifth Circuit:

> The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious. It makes no difference that he does not intend to injure his creditors when he makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them.

*Beaubouef*, 966 F.2d at 178 (quoting *Chalik*, 748 F.2d at 618).

Knowingly false oaths in initial bankruptcy schedules filed by a debtor that are later amended by a debtor can still warrant denial of discharge—particularly when the amended schedules are filed after the debtor's initial falsehoods are discovered by a creditor or bankruptcy trustee. *See Sholdra*, 249 F.3d at 382; *Beaubouef*, 966 F.2d at 178; *Bullough* 358 B.R. at 271; *Gebhardt v. Gartner (In re Gartner)*, 326 B.R. 357, 371 (Bankr. S.D. Tex. 2005).  In *Beaubouef*, the Fifth Circuit affirmed denial of a debtor's discharge when it took the debtor six months to amend his bankruptcy schedules to correct the false statements in the original bankruptcy schedules. 966 F.2d at 178.

Finally, a debtor's lack of competence or inexperience with financial matters does not excuse a debtor for making a false statement that justifies denial of a discharge. *See Sholdra*, 249 F.3d at 382–83.

The Court will now apply these legal principles to the Debtors' bankruptcy case. In short, the multiple false oaths made by the Debtors require denial of their discharge.

## C. **False Oaths by Debtors in Bankruptcy Schedules and SOFA**

The sworn Bankruptcy Schedules (herein "Schedules") filed by the Debtors required the Debtors to disclose all assets that they owned on September 15, 2016—the date of their bankruptcy filing.  All assets are required to be disclosed, regardless of value.

Here, multiple assets were owned by the Debtors on the date of their bankruptcy filing that the Debtors failed to disclose in their sworn Original Schedules, which constitute false oaths. As detailed above in the Court's Findings of Fact, the Debtors falsely stated that they owned no Bank Accounts (when in truth they owned at least four bank accounts); falsely stated that they owned no Cash (when in truth they owned a limited amount of cash); falsely stated that they owned no Time Shares (when in truth they owned three time shares); falsely stated that they owned no Stock (when in truth they owned limited stock in Comcast and AT&T); falsely stated that they owned only two term Insurance Policies (when in truth they owned five whole life insurance policies with cash surrender values). The Debtors also falsely stated that they had no Co-Debtors (when in truth, their son was a co-debtor on a car loan).

The Debtors also provided false testimony at their Creditors Meeting held on October 13, 2017. Twice, the Debtors testified under oath at the Creditors Meeting that all of their assets were disclosed in their Original Schedules. These were false statements, as the Debtors failed to disclose their Bank Accounts, their Cash, their Stock, and their whole life Insurance Policies in their Original Schedules. The Debtors had the opportunity to disclose the omitted assets when they filed Amended Schedules shortly after the Creditors Meeting, but the Debtors still did not disclose the omitted

assets in their Amended Schedules.

The Debtors also filed sworn Statement of Financial Affairs (herein "SOFA") in this bankruptcy case, which they signed under penalty of perjury. Numerous false oaths by the Debtors in their Original SOFA and Amended SOFA were proven at trial. As detailed above in the Court's Findings of Fact, the Debtors did not disclose their Rental Income on two houses; did not disclose their Investment Income from an Edward Jones account; did not disclose Ms. Robert's Consulting Income; did not fully disclose Dr. Robert's Disability/Retirement Income; did not completely disclose 90-Day Payments made to creditors; did not disclose Insider Payments made for the benefit of their son and daughter (insiders); and did not disclose four Closed Financial Accounts.

### D. Fraudulent Intent and Materiality

The type of assets, income, and transactions that the Debtors failed to disclose, as well as the multiple number of their false statements, leads the Court to conclude that the Debtors made the false statements in their sworn bankruptcy filings with "reckless disregard for the truth" sufficient to establish fraudulent intent.

For example, the Debtors stated, under penalty of perjury, that they had no Bank Accounts as of their bankruptcy filing in their Original Schedules, and reconfirmed such statement by filing sworn Amended Schedules. But almost all debtors have at least one bank account (particularly educated Debtors like these that have been long-time medical professionals).   Bank accounts are particularly important as "[f]ew, if any, assets are more material to a consumer debtor's financial affairs than a bank account for it is from that kind of asset that the creditors can discern not only an overall picture of the debtor's financial affairs, but also the details of the debtor's finances." *Pratt*, 411

19

F.3d at 567 (quoting *Johnson v. Baldridge (In re Baldrige)*, 256 B.R. 284, 290 (Bankr. E. D. Ark. 2000). Here, the Debtors had at least four bank accounts open as of their bankruptcy filing; it is impossible for the Court to believe that they honestly "forgot" about all of these bank accounts when they signed their sworn Original Schedules.

Likewise, the Debtors stated under penalty of perjury in their Original Schedules that they had no Cash on hand as of their bankruptcy filing date. Again, it is impossible for the Court to believe that these Debtors "forgot" that they had some cash in their wallet or purse on the date they filed bankruptcy; particularly Debtors like these who have made substantial incomes over long-term careers.

The Debtors also failed to disclose in their Original and Amended SOFA multiple additional sources of income (including Rental Income, Investment Income, and Consulting Income). Much of this additional income had been reported by the Debtors in their recent federal tax returns. It is difficult to believe that they simply made an honest mistake and "forgot" about these additional sources of income. The Debtors also attempted to hide pre-bankruptcy payments made for the benefit of their children by failing to disclose multiple Insider Payments in their Original and Amended SOFA.

By the Court's count, the Debtors made at least six material false statements in their sworn Original Schedules and at least seven material false statements in their sworn Original and Amended SOFA, as detailed above. The cumulative effect of these false statements by the Debtors leads the Court to conclude that the Debtors made the false statements with "reckless disregard for the truth." As a result, the Court finds that the Debtors knowingly made the false statements in their Original Schedules and Original and Amended SOFA with fraudulent intent. *See, e.g. Duncan*, 562 F.3d at 695

(supporting citations omitted); *Sholdra*, 249 F.3d. at 382; *Beaubouef*, 966 F.2d at 178; *Chu,* 679 Fed. Appx. at 319.

The Court recognizes that the Debtors made efforts to disclose omitted assets and correct their false statements by filing their Second Amended Schedules and SOFA on May 5, 2017. (PX-3). However, the Second Amended Schedules were filed by the Debtors only after the Trustee was forced to file this adversary proceeding in February 2017 challenging the false statements made by the Debtors in their Original Schedules and SOFA.  Almost eight months had elapsed from the date the Debtors filed their Original Schedules and SOFA (September 2016) and the date that the Debtors attempted to "come clean" by filing their Second Amended Schedules (May 2017). In the meantime, the Debtors reconfirmed their false statements in their Original Schedules and SOFA by filing their sworn Amended Schedules and SOFA in October 2016, which was after their Creditors Meeting where they falsely testified that they had disclosed all of their assets.

False statements in initial bankruptcy schedules which are later amended by a debtor can still warrant denial of discharge—particularly when the amended schedules are filed only after the debtor's initial falsehoods are discovered and challenged by a creditor or bankruptcy trustee. *See, e.g. Sholdra*, 249 F.3d at 382; *Beaubouef*, 966 F.2d at 178; *Gartner*, 326 B.R. at 371.

These omitted assets and false statements by the Debtors in their Original and Amended Schedules and SOFA were "material" to this bankruptcy case as they related to the existence of the Debtors' assets, the disposition of their assets, and their business transactions. In short, the Debtors failed to disclose multiple assets they

owned (such as Bank Accounts, Cash, Time Shares, Stock, and all Insurance Policies), multiple sources of additional income (such as Rental Income, Investment Income, and Consulting Income), and several pre-bankruptcy transfers of the Debtors' assets (such as all 90-Day Payments and the Insider Payments for the benefit of their children).

The Court understands that the Debtors believe that most of the omitted assets were not of significant value; but that is not the legal standard. Materiality for this purpose is not based only on the value of an omitted item or whether the omitted item caused any detriment to creditors. *See Duncan*, 562 F.3d at 695; *Beaubouef*, 966 F.2d at 178 (supporting citation omitted).

 If this were a situation where the Debtors truly made an honest mistake and omitted one (or even two) assets of little or no value, the Court might well reach a different conclusion. But this is not the situation in the Debtors' case. Here, the Debtors failed to disclose several assets and made multiple false statements in their initial sworn bankruptcy filings, reconfirmed such false statements in amended filings, and stood by their false statements for many months. The belated confession by the Debtors and attempt to cure their false statements by disclosing assets and transactions some eight months after their bankruptcy filing and only after the Trustee was required to sue the Debtors for the false statements, requires denial of the Debtors' discharge under the circumstances of this particular case.

### IV.
### <u>CONCLUSION</u>

In conclusion and for these reasons, the objection to discharge of the Debtors by the Trustee will be granted under § 727(a)(4)(A) of the Bankruptcy Code. The Debtors made numerous false oaths in this bankruptcy case that were knowingly false and material to this bankruptcy case. The multiple and cumulative number of the false statements made by the Debtors demonstrate a reckless disregard for the truth and establish fraudulent intent under the circumstances of this case.

Since the Court has determined that the Debtors' discharge should be denied under § 727(a)(4)(A) of the Bankruptcy Code, the Court need not decide the propriety of denying the Debtors a discharge under the alternative grounds of  § 727(a)(3) or § 727(a)(5) asserted by the Trustee. *See Beaubouef*, 966 F.2d at 179.

A separate Final Judgment will be signed by the Court and entered in this adversary proceeding  under Rule 58 of the Federal Rules of Civil Procedure (which applies to adversary proceedings through Bankruptcy Rule 7058) consistent with this Opinion.

###